## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEBRASKA

Civil Action No.

BRADLEY B. BAUMANN, NANCY R. BAUMANN, and
DONNA J. COSTLEY, individually; the ESTATE OF CHRISTOPHER DOUGLAS
SCHMIDT Decedent, the ESTATE OF DIANA RUTH SCHMIDT Decedent, the ESTATE
OF SAMUEL DONOVAN SCHMIDT Decedent, and the ESTATE OF CONNOR
BRADLEY SCHMIDT Decedent,  by BRADLEY B. BAUMANN, NANCY R. BAUMANN,
and DONNA J. COSTLEY co-special administrators of these Estates,

      Plaintiffs,

vs.

JOSEF SLEZAK,
AKI TRUCKING INC.,
VLADIMIR ZHUKOV,
SWIFT-TRUCK LINES, LTD.,
MTR EXPRESS, INC.,
NORTH METRO TRUCK LEASING, LLC
LONG HAUL TRUCKING, INC., and
JOHN DOES 1 - 10,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs, by and through counsel, James H. Chalat, Chalat Hatten Koupal &
Banker PC, and John P. Inserra of Inserra & Kelly, hereby file their Complaint and Jury
Demand and allege as follows:

### I.  JURISDICTION AND VENUE

1. Plaintiffs Bradley B. Baumann and Nancy R. Baumann are the biological parents of
   Diana Ruth Schmidt.  Mr. & Mrs. Baumann are citizens of the United States and
   residents of Placer County, California.

2.  Plaintiff Donna J. Costley is the biological mother of Christopher Douglas Schmidt. Mrs. Costley is a citizen of the United States and a resident of Sacramento County, California.

3.  The estates of Christopher Douglas Schmidt, Diana Ruth Schmidt, Samuel Donavan Schmidt, and Connor Bradley Schmidt, are duly filed estates opened on October 23, 2012 in the Superior Court of California, Placer County.

4.  The individual plaintiffs bring this action as duly appointed special co-administrators of the estates named herein, and as next of kin of the deceased. Nebraska Wrongful Death Act, Neb. Rev. Stat. § 30-810.

5.  The estates bring their survival actions for the pre-death tort claims of the named decedents:  Christopher Douglas Schmidt, Diana Ruth Schmidt, Samuel Donovan Schmidt, and Connor Bradley Schmidt, all of whom were killed due to the negligence of the defendants on September 9, 2012. Nebraska Survival Act, Neb. Rev. Stat. § 25-1401.

6.  Additionally, the estates of Christopher Schmidt and Diana Ruth Schmidt bring wrongful death claims for the wrongful death of their unborn infant Ethan Schmidt who suffered a wrongful death as a result of the death of his mother on September 9, 2012.  These claims are brought under the Nebraska Wrongful Death of an Unborn Child Act, Neb. Rev. Stat. § 30-809.

7.  Defendant Josef Slezak is a citizen of the Czech Republic and a resident of the State of Illinois.

8.  Defendant AKI Trucking Inc. is an Illinois corporation with a primary place of business in Romeoville, Illinois.

9.  The defendant Vladimir Zhukov is a citizen of the United States and a resident of Oak Park, Illinois.

10. Defendant Swift-Truck Lines, Ltd. is an Illinois corporation with a primary place of business in Wheeling, Illinois.

11. Defendant MTR Express, Inc. is an Illinois corporation with a primary place of business in either Wood Dale or Wheeling, Illinois.

12. Defendant North Metro Truck Leasing, LLC is a Minnesota limited liability company with a primary place of business in Albertville, Minnesota.

13. The Defendant Long Haul Trucking, Inc. is a Minnesota corporation with a primary place of business in Albertville, Minnesota.

14. The Defendants John Doe 1-10 are unknown entities or individuals responsible for the maintenance of braking systems on the tractor and/or trailer driven by Vladimir Zhukov, with ownership and control as alleged above.  Upon information and belief, the John Doe Defendants are residents of Illinois.

15. The individual and combined values of the Plaintiffs' claims exceed the jurisdictional threshold value of $75,000.00, exclusive of interest and costs. Taking into account the nature and extent of the injuries, damages and losses sustained, and the reasonable actual, general, economic, and non-economic damages sustained by the plaintiffs, it is the opinion and experience of undersigned counsel that the value of the case exceeds the jurisdictional threshold value of $75,000.00, exclusive of interest and costs.

16. This Court therefore has original diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1).

17. The acts and omissions alleged herein occurred in Cheyenne County, Nebraska. Venue is proper in the United States District Court for the District of Nebraska.

## II. ALLEGATIONS OF FACT RELATING TO DEFENDANTS ZHUKOV, SWIFT TRUCK LINES, LTD., MTR EXPRESS, INC.,  NORTH METRO TRUCK LEASING, and LONG HAUL TRUCKING, INC.

18. On September 9, 2012, 3000' east of mile marker 39 on westbound Interstate 80 close to the town of Potter, Nebraska, Vladimir Zhukov was driving a 2003 Volvo tractor, VIN #4V4NC9JH53N345168, Illinois license plate # P677577 pulling a flat-bed semi-trailer with Illinois license plate # 448492ST.  The Gross Combination of the Vehicle Weight Rating (CCVWR) of the Zhukov tractor semi-trailer rig was greater than 26,000 lbs.

19. Swift Truck Lines, Ltd., at all relevant times, was the owner of the 2003 Volvo tractor, VIN #4V4NC9JH53N345168, Illinois license plate # P677577.  Vladimir Zhukov was driving the aforementioned Volvo tractor with the permission, consent, and for the benefit of defendant Swift Truck Lines, Ltd.

20. MTR Express, Inc., was the duly-authorized, licensed, and regulated Carrier with authority and responsibility for the Zhukov-driven 2003 Volvo tractor, VIN #4V4NC9JH53N345168, Illinois license plate # P677577, the flat-bed semi-trailer with Illinois license plate # 448492ST, and its cargo.

21. At or about 0400 MDT on September 9, 2012, near mile marker 39 on westbound Interstate 80, Zhukov's tractor semi-trailer became disabled allegedly due to an air brakes failure.  The failure of the air brakes was, upon information and belief, due to the negligent maintenance of the 2003 Volvo, by either defendant Zhukov, defendant Swift Truck Lines, Ltd., the defendant MTR Express, and/or the

4

negligence of John Does 1 - 10.  Moreover, defendant Zhukov negligently failed to timely apprehend the air pressure failure, to safely remove his vehicle from the roadway, and, thus, to avoid becoming a roadway hazard in the driving lane.

22. Upon the air brake failure, Zhukov moved his tractor onto the right shoulder, but negligently allowed his trailer to remain in a lane of travel, thus blocking and obstructing traffic in a driving lane of the roadway.

23. Some distance behind defendant Vladimir Zhukov, Keith Johnson was driving a 2011 Peterbuilt Tractor VIN# 1XPHDP9XOBD120178 pulling a Benson Trailer with Minnesota license plate# 8762STG westbound on Interstate 80.  The Gross Combination of the Vehicle Weight Rating (CCVWR) of the Johnson tractor semi-trailer rig was greater than 26,000 lbs.

24. Defendant North Metro Truck Leasing, LLC was, at all relevant times, the owner of the 2011 Peterbuilt tractor VIN# 1XPHDP9XOBD120178.  Keith Johnson, was driving the aforementioned Peterbilt tractor with the permission, consent and for the benefit of defendant North Metro Truck Leasing, LLC.

25. At all times relevant, Mr. Johnson was acting in the course and scope of his employment, and driving for the benefit of his employer, and the listed DOT carrier, Long Haul Trucking, Inc.

26. At or about 0430 MDT on September 9, 2012, Keith Johnson negligently failed to avoid defendant Zhukov's trailer which remained in a travel lane of I-80 notwithstanding that the Zhukov rig had been marked by placards and which, upon information and belief, was displaying its four-way emergency warning lights.  Keith Johnson negligently drove, at highway speed, the 2011 Peterbilt-Benson tractor-

5

trailer rig directly into and collided with Zhukov's trailer in the right travel lane.  An intense fire then ensued, consuming entirely the Peterbilt tractor, damaging the attached Benson trailer, and doing considerable damage to the tractor semi-trailer rig which had been negligently parked by Zhukov in the driving lane.  Tragically, Mr. Keith Johnson died in the fire.

27. The collision and fire which involved Mr. Johnson's semi-tractor-trailer rig and Zhukov's semi-tractor-trailer rig blocked both lanes of Westbound I-80 and interrupted the traffic flow of the roadway, as it blocked and made westbound I-80 impassable at the place of the collision and fire.  Traffic behind the collision and fire came to a stop.

28. The stoppage of traffic on westbound I-80, which was proximately caused by the collision and fire involving the Zhukov and Johnson tractor semi-trailer rigs, created a reasonably foreseeable hazard and danger to following traffic, including plaintiffs' decedents herein.  Specifically, the stoppage created an unreasonable risk of harm from secondary accidents caused by the traffic flow interruption on westbound I-80.

### III.  ALLEGATIONS OF FACT RELATING TO THE DECEDENTS: CHRISTOPHER DOUGLAS SCHMIDT, DIANA RUTH SCHMIDT, SAMUEL DONOVAN SCHMIDT, CONNOR BRADLEY SCHMIDT and as yet unborn child ETHAN SCHMIDT

29. Approximately one mile east of the Zhukov/Johnson collision, 1584' east of mile marker 40, on westbound I-80, and at the end of the line of stopped traffic which was blocked by the collision and fire involving the Zhukov and Johnson tractor semi-trailer rigs, there was a black 2006 Freightliner tractor with Iowa license plate # PX2844 pulling a white 1999 Utility trailer with Iowa license plate # RZ8814

6

driven by William Wiener and owned by Cornpatch Express, Inc., of Emmetsville, Iowa.

30. Stopped behind the Cornpatch trailer was a 2007 Toyota Corolla with California license plate # 6HCT699 owned by Christopher Douglas Schmidt and Diana Ruth Schmidt.  Mrs. Schmidt was driving the Corolla.  She was 71/2 months pregnant with a viable fetus which she and her husband had decided to name Ethan.  Also riding as passengers in the Corolla were the Schmidt children: Connor Bradley Schmidt, age two, DOB August 14, 2010, and Samuel Donovan Schmidt, age three, DOB December 19, 2008.   Both Connor and Samuel were in age/weight appropriate child safety seats and restraints.

31. At a stop behind the Corolla driven by Mrs. Schmidt was her husband Christopher Schmidt driving his and Mrs. Schmidt's 2010 Ford Mustang with California license plate # 6NCR216.

32. Both Mr. & Mrs. Schmidt were safely stopped at the end of the line of stopped traffic behind the Zhukov/Johnson accident.  They were, nonetheless, at increased risk for secondary collisions caused by the stoppage of traffic on westbound I-80.  Upon information and belief, the Cornpatch Tractor and semi-trailer had activated its four-way emergency lights. Further, upon information and belief, Mr. & Mrs. Schmidt had also activated their four-way emergency lights.

33. The line of traffic stopped due to the Zhukov/Johnson collision was visible for no less than one mile to approaching traffic, and users of citizens band radios, both westbound and eastbound, were warning oncoming drivers that traffic had come to a stop ahead.

### IV. ALLEGATIONS OF FACT RELATING TO DEFFENDANTS JOZEF SLEZAK, and AKI TRUCKING

34. On September 8th and 9th, 2012, Josef Slezak was the owner-operator of and driving a white 2003 Kenworth tractor with Illinois license plate # P679446 pulling a white Wabash trailer with Illinois license plate 888N726 westbound on Interstate 80. The Gross Combination of the Vehicle Weight Rating (CCVWR) of the Slezak tractor semi-trailer rig was greater than 26,000 lbs.

35. At all times relevant, Mr. Slezak was acting in the course and scope of his employment and driving for the benefit of the 2003 Kenworth tractor semi-trailer's registered DOT carrier AKI Trucking, Inc.

36. Mr. Slezak arrived at the Midwest Services Terminal in Milwaukee, Wisconsin on September 8, 2012 at 1049 MDT and departed the Midwest Services Terminal at 1349 MDT.

37. Mr. Slezak approached the stopped traffic at mile marker 40 from the east at approximately 0519 MDT on September 9, 2012.

38. Mr. Slezak failed to stop or slow, did not use his brakes, and collided into the Ford Mustang at approximately 75 miles per hour.

39. The force of the impact propelled the stopped Ford Mustang operated by Mr. Schmidt into the rear of the stopped Toyota Corolla operated by Mrs. Schmidt and in which the Schmidt children were passengers. The force of that impact propelled the Toyota Corolla underneath the utility trailer being towed by the Cornpatch tractor and driven by Mr. Weiner.

40. As a direct and proximate result of the collision by the Slezak, and as a direct and proximate result of the stoppage of traffic on I-80, the Ford Mustang was caused to

explode into flames, as was the Toyota Corolla then trapped under the Cornpatch trailer.  Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and the unborn child, Ethan Schmidt, were caused to suffer death.

## V.  CLAIMS FOR RELIEF AS TO THE VEHICLE DRIVEN BY JOSEF SLEZAK

### FIRST CLAIM FOR RELIEF
### Negligence *per se* – Josef Slezak

41. Plaintiffs incorporate all allegations above as though fully set out herein.

42. Defendant Josef Slezak had a duty to "not follow another vehicle more closely than is reasonable and prudent, and such driver shall have due regard for the speed of such vehicles and the traffic upon and the condition of the roadway." Neb. Rev. Stat. § 60-6,140.

43. Defendant Josef Slezak had a duty not to drive "carelessly or without due caution so as to endanger a person or property." Neb. Rev. Stat. § 60-6,212.

44. Defendant Josef Slezak had a duty not to drive "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."  Neb. Rev. Stat. § 60-6,185.

45. Plaintiffs' decedents were members of the class these statutes seek to protect, and suffered the type of harm these statutes are intended to prevent.

46. Defendant Josef Slezak breached each of his statutory duties by colliding into the Schmidt Ford and Toyota at a high rate of speed, without exercising due regard for traffic upon the roadway or hazards then existing at the time of the collision.

47. As a direct and proximate result of Defendant Josef Slezak's breaches of his statutory duties of care, Plaintiffs sustained damages as set out below.

## SECOND CLAIM FOR RELIEF
**Violations of Federal Motor Carrier Safety**
**Administration Regulations – Josef Slezak**

48. Plaintiffs incorporate all allegations above as though fully set out herein.

49. Josef Slezak, at all times relevant, had a duty to comply with regulations promulgated by the Federal Motor Carrier Safety Administration.  49 C.F.R. § 392.2.

50. 49 C.F.R. § 392.3 provides that "No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause."

51. 49 C.F.R. § 395.3 provides that "A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. The driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty…  A driver may drive a total of 11 hours during the 14-hour period specified [above.]"  Slezak violated both of the provisions of this mandatory regulation, and in fact his violations were "egregious," in that his hours on duty and hours of driving exceeded both maximums by more than three hours.

52. Plaintiffs were members of the class these regulations seek to protect, and suffered the type of harm these regulations are intended to prevent.

53. Defendant Josef Slezak failed to comply with each of these regulations, causing damages as set out below.

### THIRD CLAIM FOR RELIEF
### *Vicarious Liability* – AKI Trucking, Inc.

54. Plaintiffs incorporate all allegations above as though fully set out herein.

55. At all relevant times, Defendant AKI Trucking, Inc., was the duly registered and authorized DOT Carrier responsible for the safety, compliance, and haulage of the tractor semi-trailer rig driven by  Defendant Slezak.

56. At all relevant times, Defendant Slezak was driving the 2003 Kenworth tractor semi-trailer rig with the permission, consent, and for the benefit of AKI Trucking, Inc.

57. AKI Trucking, Inc., as carrier, bears liability for the acts of Josef Slezak, and for the compliance, safety, maintenance and use of the Slezak tractor semi-trailer rig and thus caused the damages set out below.

### FOURTH CLAIM FOR RELIEF
### Violations of Federal Motor Carrier Safety
### Administration Regulations – AKI Trucking, Inc.

58. Plaintiffs incorporate all allegations above as though fully set out herein.

59. AKI Trucking, Inc. at all times relevant, had a duty to comply with regulations promulgated by the Federal Motor Carrier Safety Administration.   49 C.F.R. § 392.2.

60. 49 C.F.R. § 392.3 provides that "No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause."

61. 49 C.F.R. 395.3 provides that "no motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle… unless the driver

complies with the following requirements: "A driver may not drive without first taking 10 consecutive hours off duty; A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. The driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty."

62. Plaintiffs were members of the class these regulations seek to protect, and suffered the type of harm these regulations are intended to prevent.

63. AKI Trucking, Inc. breached these regulations by permitting Josef Slezak to drive in violation of these regulations.

64. As a direct and proximate result of AKI Trucking's breach of these regulations, Plaintiffs sustained damages as set out below.

**VI.  CLAIMS FOR RELIEF AS TO THE VEHICLE DRIVEN BY VLADIMIR ZHUKOV**

**FIFTH CLAIM FOR RELIEF**
**Negligence *per se* – Vladimir Zhukov**

65. Plaintiffs incorporate all allegations above as though fully set out herein.

66. At all relevant times, Neb. Rev. Stat. § 60-6,124 was in full force and effect, which provides "No person shall stop, park, or leave standing any vehicle on a freeway except in areas designated or unless so directed by a peace officer, except that when a vehicle is disabled or inoperable or the driver of the vehicle is ill or incapacitated, such vehicle shall be permitted to park, stop, or stand on the shoulder facing in the direction of travel with all wheels and projecting parts of such vehicle completely clear of the traveled lanes."

67. Defendant Vladimir Zhukov breached Neb. Rev. Stat. § 6-6,124 by blocking the right lane of travel with his trailer.

12

68. Stopped traffic upon the roadway is a hazard well-known within the transportation industry to be a leading cause of secondary collisions.

69. As a direct and proximate result of Zhukov's breach of Neb. Rev. Stat. § 6-6,124, a motor vehicle collision occurred, causing traffic to come to a stop, and creating the conditions which reasonably and foreseeably led to the deaths of Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and unborn baby Ethan Schmidt.

70. Plaintiffs' decedents were members of the class this statute seeks to protect, and suffered the type of harm this statute is intended to prevent.

71. As a direct and proximate result of the negligence *per se* of Defendant Zhukov, Plaintiffs suffered damages as set out below.

## SIXTH CLAIM FOR RELIEF
### *Vicarious Liability*– Swift-Truck Lines, Ltd.

72. Plaintiffs incorporate all allegations above as though fully set out herein.

73. At all relevant times, Defendant Zhukov was an employee of Swift-Truck Lines, Ltd.

74. At all relevant times, Defendant Zhukov was acting in the course and scope of his employment for Swift-Truck Lines, Ltd.

75. At all relevant times, Defendant Zhukov was driving for the benefit of Swift-Truck Lines, Ltd.

76. Swift-Truck Lines, Ltd., as master, bears liability for the acts of Vladimir Zhukov, its servant.

## SEVENTH CLAIM FOR RELIEF
### *Vicarious Liability*– MTR Express, Inc.

77. Plaintiffs incorporate all allegations above as though fully set out herein.

78. At all relevant times, Defendant MTR Express, Inc., was the duly registered and authorized DOT Carrier responsible for the safety, compliance, and haulage of the tractor semi-trailer rig driven by Defendant Zhukov.

79. At all relevant times, Defendant Zhukov was driving the 2003 Volvo tractor semi-trailer rig with the permission, consent and for the benefit of MTR Express, Inc.

80. At all relevant times, Defendant Zhukov was driving for the benefit of MTR Express, Inc.

81. MTR Express, Inc., as carrier, bears liability for the acts of Defendant Zhukov, and for the compliance, safety, maintenance, and use of the Zhukov tractor semi-trailer rig and, thus, caused the damages set out below.

82. At all relevant times, MTR Express, Inc. was the owner of the 2003 Volvo operated by Mr. Zhukov.

83. At all relevant times, Mr. Zhukov was operating the 2003 Volvo with the permission of and for the benefit of MTR Express, Inc.

84. MTR Express, Inc., as owner, negligently entrusted its vehicle to Mr. Zhukov.

85. MTR Express, Inc. has vicarious liability for the negligence of Mr. Zhukov and the damages proximately caused as set out below.

## EIGHTH CLAIM FOR RELIEF
### Negligence – John Does 1-5

86. Plaintiffs incorporate all allegations above as though fully set out herein.

14

87. Defendant John Does 1-5 owned the trailer pulled by Zhukov's tractor and had a duty to exercise reasonable care with regard to maintenance of the air brakes on that trailer.

88. John Doe Defendants 1-5 breached his/her/its/their duty of reasonable care with regard to the maintenance of the air brakes on trailer driven by Zhukov.

89. Stopped traffic upon the roadway is a hazard well-known within the transportation industry to be a leading cause of secondary collisions.

90. As a direct and proximate result of the John Doe Defendants' breaches of the duty of reasonable care, the trailer's air brakes failed, which resulted in a motor vehicle collision, causing traffic to come to a stop, and created a hazard of stopped traffic upon the road, which reasonably and foreseeably led to the deaths of Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and unborn baby Schmidt.

91. As a direct and proximate result of the John Does' negligence, plaintiffs suffered damages as set out below.

**NINTH CLAIM FOR RELIEF**
**Negligence – John Does 6-10**

92. Plaintiffs incorporate all allegations above as though fully set out herein.

93. Defendants John Does 6-10 had a duty to exercise reasonable care with regard to maintenance of the air brakes on the tractor and trailer driven by Zhukov.

94. The John Doe Defendants breached his/her/its/their duty of reasonable care with regard to the maintenance of the air brakes on the tractor and trailer driven by Zhukov.

95. Stopped traffic upon the roadway is a hazard well-known within the transportation industry to be a leading cause of secondary collisions.

96. As a direct and proximate result of the John Doe Defendants' breaches of the duty of reasonable care, Zhukov's air brakes failed, which resulted in a motor vehicle collision, causing traffic to come to a stop, and created a hazard of stopped traffic upon the road, which reasonably and foreseeably led to the deaths of Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and unborn baby Schmidt.

97. As a direct and proximate result of the John Does' negligence, plaintiffs suffered damages as set out below.

## VII. CLAIMS FOR RELIEF AS TO THE VEHICLE DRIVEN BY KEITH JOHNSON

### TENTH CLAIM FOR RELIEF
### *Vicarious Liability* – Long Haul Trucking, Inc.

98. Plaintiffs incorporate all allegations above as though fully set out herein.

99. At all relevant times, Keith Johnson was an employee of Long Haul Trucking, Inc.

100. At all relevant times, Keith Johnson was acting in the course and scope of his employment for Long Haul Trucking, Inc.

101. At all relevant times, Keith Johnson was driving for the benefit of Long Haul Trucking, Inc.

102. Long Haul Trucking, Inc., as master, bears liability for the acts of Keith Johnson, its servant.

103. Defendant Long Haul Trucking, Inc., through its employee, Keith Johnson, had a duty to "not follow another vehicle more closely than is reasonable and prudent,

16

and such driver shall have due regard for the speed of such vehicles and the traffic upon and the condition of the roadway." Neb. Rev. Stat. § 60-6,140.

104. Defendant Long Haul Trucking, Inc., through its employee, Keith Johnson, had a duty not to drive "carelessly or without due caution so as to endanger a person or property." Neb. Rev. Stat. § 60-6,212.

105. Defendant Long Haul Trucking, Inc., through its employee, Keith Johnson, had a duty not to drive "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." Neb. Rev. Stat. § 60-6,185.

106. Plaintiffs were members of the class these statutes seek to protect, and suffered the type of harm these statutes are intended to prevent.

107. Defendant Long Haul Trucking, Inc., through its employee, Keith Johnson, breached each of these statutory duties of care by travelling too fast for existing conditions, failing to recognize a hazard, and colliding into Zhukov's tractor and trailer.

108. Stopped traffic upon the roadway is a hazard well-known within the motor transportation industry, and known to Long Haul Trucking, Inc., through its employee, Keith Johnson, to be a leading cause of secondary collisions.

109. As a direct and proximate result of these breaches of statutory duties of care, a motor vehicle collision occurred, causing traffic to come to a stop, and creating the conditions which reasonably and foreseeably led to the deaths of Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and unborn baby Schmidt.

110. As a direct and proximate result of the negligence and negligence *per se* of Defendant Long Haul Trucking, Inc., through its employee, Keith Johnson, Plaintiffs suffered damages as set out below.

111. At all relevant times, Defendant Long Haul Trucking, Inc. was the duly registered and authorized DOT Carrier responsible for the safety, compliance and haulage of the tractor semi-trailer rig driven by Keith Johnson.

112. At all relevant times, Keith Johnson was driving the 2011 Peterbilt  tractor semi-trailer rig with the permission, consent and for the benefit of Long Haul Trucking, Inc.

113. At all relevant times, Keith Johnson was driving for the benefit of Long Haul Trucking, Inc.

114. Long Haul Trucking, Inc., as carrier, bears liability for the acts of Keith Johnson and for the compliance, safety, maintenance and use of the 2011 Peterbilt tractor semi-trailer rig and thus caused the damages set out below.

**ELEVENTH CLAIM FOR RELIEF**
***Vicarious Liability*– North Metro Truck Leasing,     LLC.**

115. Plaintiffs incorporate all allegations above as though fully set out herein.

116. At all relevant times, North Metro Truck Leasing, LLC, was the owner of the 2011 Peterbilt operated by Mr. Keith Johnson.

117. At all relevant times, Keith Johnson was operating the 2011 Peterbilt with the permission of and for the benefit of North Metro Truck Leasing, LLC.

118. North Metro Truck Leasing, LLC., as owner, negligently entrusted its vehicle to Keith Johnson.

18

119. Defendant North Metro Truck Leasing, LLC., through its employee, has vicarious liability for the negligence and of Keith Johnson and the damages proximately caused as set out below.

**DAMAGES**

120. As a direct and proximate result of the negligence and negligence *per se* of the defendants, Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and unborn baby Schmidt were caused to suffer death.

121. As a direct and proximate result of the negligence and negligence *per se* of the defendants, Christopher Schmidt, Diana Schmidt, Connor Schmidt, and Samuel Schmidt were caused to suffer conscious pre-fatal injury mental anguish resulting from the apprehension and fear of impending death, and conscious physical pain, suffering, mental anguish, and other recoverable damages of a personal and pecuniary nature from the time at which they first apprehended the hazard they were placed in by the stopped traffic on westbound I-80, and their apprehension of the imminent impact of the Slezak tractor semi-trailer rig until the time of their deaths.

122. As a direct and proximate result of the negligence and negligence *per se* of the defendants, the estates of Christopher Schmidt, Diana Schmidt, Connor Schmidt, and Samuel Schmidt were caused to suffer financial harm including the loss of income, pecuniary harm, net pecuniary loss, and other recoverable damages of a personal and pecuniary nature from the time of impact until the time of their deaths.

123. As a direct and proximate result of the negligence and negligence *per se* of the defendants, the individual plaintiffs have suffered, as next of kin, and will continue to suffer, the loss of their children's and grand-children's society, comfort, companionship, and all other losses of a personal and pecuniary nature.

124. As a direct and proximate result of the negligence and negligence *per se* of the defendants, the estates of Christopher Schmidt and Diana Schmidt, sustained the damages caused by the wrongful death of their unborn son, Ethan Schmidt.

125. As a direct and proximate result of the negligence and negligence *per se* of the defendants, plaintiffs have sustained economic and pecuniary losses, including, but not limited to, funeral expenses.

WHEREFORE, Plaintiffs pray for judgment to enter in their favor and against defendants for damages in an amount to be determined by a jury, plus pre-judgment interest from the date of loss, September 9, 2012, costs of litigation and, if proper, attorney fees, and for such other relief as the Court deems just and proper.

## PLAINTIFFS' JURY DEMAND

Plaintiffs respectfully demand trial by jury in Omaha, Nebraska.

Dated: October 29, 2012

Respectfully submitted,

CHALAT HATTEN KOUPAL & BANKER PC

*/s/ James H. Chalat*

_____
James H. Chalat
Chalat Hatten Koupal & Banker PC
1900 Grant Street, Suite 1050
Denver, Colorado 80203
Telephone: (303) 861-1042
Facsimile: (303) 861-0506
jchalat@chalatlaw.com
ATTORNEYS FOR PLAINTIFFS

INSERRA & KELLEY,

*/s/ John P. Inserra*

_____
John P. Inserra
6790 Grover Street, Suite 200
Omaha, Nebraska 68106-3612
Telephone: (402)391-4000
Facsimile: (402) 391-4039
jpinserra@inserra.com
ATTORNEYS FOR PLAINTIFFS