IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BRADLEY B. BAUMANN,** individually, co-special administrators of these Estates, **NANCY R. BAUMANN,** individually, co-special administrators of these Estates, and **DONNA J. COSTLEY,** individually, co-special administrators of these Estates, | ) ) ) ) ) ) ) ) ) ) | **8:12CV383** |
| **Plaintiffs,** | ) ) | |
| V. | ) ) | **MEMORANDUM AND ORDER** |
| **JOSEF SLEZAK, VLADIMIR ZHUKOV, SWIFT-TRUCK LINES, LTD., LONG HAUL TRUCKING, INC., JOHN DOES 1 - 10, AKI TRUCKING, INC., and MTR EXPRESS, INC.,** | ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

This matter is before the Court on the motions for summary judgment filed by Defendant Long Haul Trucking, Inc. ("Long Haul") (filing 117) and Defendants Vladimir Zhukov ("Zhukov"), Swift-Truck Lines, Ltd. ("Swift") and MTR Express, Inc. ("MTR") (collectively "the MTR Defendants") (filing 113). For the reasons explained below, the motions will be granted.

STATEMENT OF FACTS

This lawsuit arises out of two traffic accidents that occurred on September 9, 2012, on westbound Interstate 80 in Cheyenne County, Nebraska. At the time leading up to the first accident, Zhukov, driving for Defendant MTR, was operating a 2003 Volvo tractor and pulling a flat-bed semi trailer, owned by Swift. At approximately 4:15 a.m., Zhukov struck something in the roadway which caused the vehicle to lose air brake pressure. Zhukov then

stopped his vehicle, thereby obstructing the right travel lane of I-80. Another truck driver, Gary Mayes, who observed Zhukov's disabled vehicle, placed a call to 911 which was logged in at 4:20 a.m. At approximately 4:24 a.m., Deputy Zachary Goodrich was dispatched to the scene of the Zhukov vehicle. At approximately 4:38 a.m., a collision occurred between a truck driven by Keith Johnson ("Johnson"), on behalf of Long Haul, and Zhukov's stopped vehicle, thereby causing a fire, as well as personal injuries to Johnson which resulted in his death.

After the accident between the Johnson and Zhukov trucks, I-80 was closed to westbound traffic, and vehicles were stopped for almost a mile east of the collision site. Among those vehicles were automobiles driven by husband and wife, Christopher and Diana Schmidt. Mrs. Schmidt was driving a Toyota Corolla, and Mr. Schmidt was directly behind her driving a Ford Mustang. Josef Slezak ("Slezak"), driving a 2003 Kenworth tractor semi-trailer rig for the benefit of Defendant AKI Trucking, Inc. ("AKI"), approached the stopped traffic from the east at approximately 5:14 a.m. He did not apply the brakes, and his truck hit the Schmidt vehicles at approximately seventy-five miles-per-hour. When Slezak's truck impacted the rear of Mr. Schmidt's vehicle, it shoved Mr. Schmidt's vehicle into the car occupied by Mrs. Schmidt, and the couple's young children. The car occupied by Mrs. Schmidt and the children was pushed under another truck that was stopped in front of the Schmidt vehicles. Mr. Schmidt, Mrs. Schmidt, and their two sons, Samuel and Connor Schmidt, were killed in the accident, as was Mrs. Schmidt's unborn child.

There were at least thirty-six minutes between the Zhukov/Johnson accident and the Slezak/Schmidt collision. Prior to the Slezak/Schmidt accident, at least twenty vehicles had safely come to a stop due to the stalled traffic conditions. Plaintiff's Complaint alleges that "[t]he line of traffic stopped due to the Zhukov/Johnson collision was visible for no less than one mile to approaching traffic, and users of band radios, both westbound and eastbound, were warning oncoming drivers that traffic had come to a stop ahead." (Filing 39.) Plaintiffs' Complaint further alleges that when they stopped on I-80, Mr. and Mrs. Schmidt activated their four-way emergency lights. (Id.) The weather at the time was clear, with no wind.

The physical distance between the initial point of impact between the Zhukov and

Johnson trucks, and the initial point of impact between the Slezak and Schmidt vehicles was .86 of a mile. Nebraska State Trooper and accident reconstructionist Travis Wallace ("Wallace") determined that Slezak ran into the back of the Ford Mustang before even attempting to stop. Wallace concluded that Slezak was most likely fatigued and unable to operate a motor vehicle safely, thereby leading to the collision with the Schmidt family. Slezak has admitted that he did not slow down or brake before the accident with the Schmidts and that he was driving over the eleven hours of service limit imposed on commercial truck drivers. At the time of the accident, Slezak had been driving for approximately fourteen hours.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate its allegations with "sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (citation and quotation omitted). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## DISCUSSION

Plaintiffs' Complaint alleges that Long Haul Trucking is vicariously liable for the negligence of its employee, Johnson, in purportedly causing the Zhukov/Johnson accident, which allegedly led to the Slezak/Schmidt collision. (Filing 39.) Specifically, the Complaint alleges that as a direct and proximate result of Johnson's negligence, "a motor vehicle

3

collision occurred, causing traffic to come to a stop, and creating the conditions which reasonably and foreseeably lead to the deaths of Christopher Schmidt, Diana Schmidt, Connor Schmidt, Samuel Schmidt, and unborn baby Schmidt." (*Id*.)

Likewise, Plaintiffs' Complaint alleges that Zhukov negligently blocked traffic on I-80 and, as a direct and proximate result of this negligence, "a motor vehicle collision occurred, causing traffic to come to a stop, and creating the conditions which reasonably and foreseeably led to the deaths of [the Schmidts]." (*Id*.) Plaintiffs maintain that Swift is liable for the negligence of its employee, Zhukov, and that MTR negligently entrusted its vehicle to Zhukov and, therefore, bears liability for Zhukov's negligent acts.

Long Haul and the MTR Defendants (collectively "Defendants") contend that they are entitled to summary judgment because they did not owe the Schmidts a duty of care, and even if a duty was owed, Plaintiffs cannot demonstrate that any such duty was breached. Defendants also maintain that summary judgment is appropriate because Plaintiffs cannot show that any purported negligence on their part foreseeably led, or proximately caused, the collision between Slezak and the Schmidts. Having carefully considered the matter, the Court concludes, as a matter of law, that Defendants' alleged negligence was not the proximate cause of Plaintiffs' injuries. Consequently, the Court need not, and will not, directly address the issues of duty and breach in this Order.

In a diversity action for negligence, the Court must apply the law of the forum state, in this case, Nebraska. *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002). In order to recover in a negligence action under Nebraska law, a plaintiff must show "a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W. v. Lancaster Cty, Sch. Dist. 0001*, 280 Neb. 205, 210, 784 N.W.2d 907, 913 (2010) (citation omitted). The question of whether a legal duty exists is a question of law. *Id*. "Although the question of proximate cause is ordinarily for the determination of the jury, where . . . only one inference can be drawn, it is for the court to declare whether a given act or series of acts is the proximate cause of the injury." *Shelton v. Bd. of Regents of University of Nebraska*, 211 Neb. 820, 830, 320 N.W.2d 748, 745 (1982) (quotation omitted).

"Under Nebraska negligence law, proximate cause consists of three elements: that (1)

4

but for the negligence, the injury would not have occurred, (2) the injury is the natural and probable result of the negligence, and (3) there is no efficient intervening cause." *Heatherly v. Alexander*, 421 F.3d 638, 641-42 (8th Cir. 2005). "The *foreseeability* of an injury that results from a negligent act determines whether that injury is the 'natural and probable result' of the act." *Id*. at 642 (emphasis in original). "To constitute proximate cause . . . the injury must be the natural and probable result of the negligence, and be of such a character as an ordinarily prudent person could have known, or would or ought to have foreseen might probably occur as the result." *Steenbock v. Omaha Country Club*, 110 Neb. 794, 195 N.W. 117, 118 (1923).

"An efficient intervening cause is new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury." *Latzel v. Bartek*, No. S-13-053, 2014 WL 1724349, *8 (Neb. May 2, 2014) (citation omitted). "The causal connection is severed when (1) the negligent actions of a third party intervene, (2) the third party had full control of the situation, (3) the third party's negligence could not have been anticipated by the defendant, and (4) the third party's negligence directly resulted in injury to the plaintiff." *Id*. "The doctrine that an intervening act cuts off a tort-feasor's liability comes into play only when the intervening cause is not foreseeable. But if a third party's negligence is reasonably foreseeable, then the third party's negligence is not an efficient intervening cause as a matter of law." *Wilke v. Woodhouse Ford*, 278 Neb. 800, 816-17, 774 N.W.2d 370, 383 (2009).

The Court finds that Slezak's negligence was an efficient intervening cause, which severed any causal connection between Defendants' conduct and the injuries sustained by Plaintiffs. Slezak's actions were extraordinary and could not have been anticipated by Defendants. According to the Complaint, the line of stopped traffic due to the Zhukov/Johnson collision was visible for no less than one mile to approaching traffic, and users of band radios, both westbound and eastbound, were warning oncoming drivers that traffic had come to a stop ahead. The weather was clear, and at least twenty vehicles had safely come to a stop behind the scene of the Zhukov/Johnson collision. Slezak did not slow down or brake before colliding with the Schmidts, and slammed into the Schmidt vehicles at approximately seventy-five miles-per-hour. At the time of his accident with the Schmidts, Slezak was driving well-over the eleven hours of service limit imposed on commercial truck

drivers. Viewing the facts most favorably to Plaintiffs, the evidence shows that Slezak had complete control over the situation and could have prevented the collision by exercising reasonable care while driving toward the line of stopped vehicles. There is no evidence that any condition attributable to the stopped traffic prevented Slezak from safely stopping his vehicle.

The Court's decision is supported by a recent Nebraska Supreme Court case, as well as several others dealing with efficient intervening cause in the context of automobile accidents. In *Latzel v. Bartek*, No. S-13-053, 2014 WL 1724349 (Neb. May 2, 2014), the personal representative of an automobile passenger's estate brought suit against two landowners for injuries sustained in an accident which occurred at an unmarked intersection. The plaintiff alleged that the landowners were negligent by planting corn too close to the roadside, thereby obstructing motorists' vision at the intersection. The supreme court affirmed the district court's award of summary judgment to the landowners, stating:

> [A]lthough the landowners anticipated speeding, they were not bound to anticipate that drivers would disregard the obvious danger of traversing a visually obstructed unmarked intersection without being able to see what they needed to see to do so safely. Reasonable minds cannot differ that the drivers' actions could not have been anticipated by the landowners and that as a matter of law, the drivers' negligence constituted an efficient intervening cause of the collision, thus severing the causal connection between the landowners' conduct and [the decedent's] injuries.

*Id*. at *11. *See also Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988) (finding that driver's failure to use caution when entering a visually obstructed intersection, rather than county's failure to place a stop sign, was an efficient intervening cause of intersection collision where the driver could have exercised reasonable care to avoid the collision); *Willet v. County of Lancaster*, 271 Neb. 570, 713 N.W.2d 483 (2006) (finding as a matter of law that a motorist's negligence in proceeding through a visually obstructed intersection in disregard of obvious danger was unforeseeable and constituted an efficient intervening cause of a collision); *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987) (finding as a matter of law that the defendants were not bound to anticipate that a driver would negligently attempt to cross a visually obstructed intersection). As in *Latzel*,

Defendants may have generally anticipated that traffic would become impeded or stopped due to a traffic accident occurring on the roadway. However, Defendants were not bound to anticipate that a fatigued trucker, driving well-over the hours of service limit, would fail to stop behind a line of traffic at a point nearly a mile away from the initial collision and at least thirty-six minutes after the initial accident, and slam into the back of the Schmidts' vehicle at seventy-five miles-per-hour without even attempting to apply his brakes.

Although research revealed no Nebraska or Eighth Circuit case law directly addressing proximate cause under the precise factual scenario presented here, courts in other jurisdictions have found proximate cause lacking as a matter of law in such situations. Particularly on point is the Seventh Circuit Court of Appeals' decision in *Blood v. VH-1 Music First*, 668 F.3d 543 (7th Cir. 2012), where a truck driver caused a three-car accident, resulting in the closure of northbound lanes of traffic on the interstate. The lane closure created a traffic jam stretching several miles back from the original accident. Four hours after the initial collision, a truck driver, while traveling at approximately fifty-five miles-per-hour, slammed into the back of a car that had stopped for the traffic, killing one of the car's occupants and seriously injuring the other. The Seventh Circuit Court of Appeals held that the truck driver who caused the first accident did not, as a matter of law, proximately cause the second accident. The court recognized that in cases involving successive car accidents, proximate cause has been resolved as a matter of law based on the following considerations: "(a) lapse of time; (b) whether the force initiated by the original wrongdoer continued in active operation up to the injury . . . (c) whether the act of the intervenor can be considered extraordinary . . . and (d) whether the intervening act was a normal response to the situation created by the wrongdoer." *Id.* at 546. (citations omitted). While acknowledging courts' general deference to juries on questions of proximate cause, the court found that allowing the case "to continue beyond summary judgment opens the door to endless liability, such that the first wrongdoer in a highway accident will forever be liable to all other drivers that follow. This is plainly a result that proximate cause analyses are designed to avoid." *Id.* at 549.

Similarly, in *Donegan v. Denney*, 457 S.W.2d 953 (Ky. 1970), a Pepsi truck driver lost some of the cargo he was carrying as he attempted to merge onto an expressway. The driver stopped the truck and attempted to warn oncoming traffic of the blockage. The car immediately behind the Pepsi truck ran through the spilled cargo and blew out its tires.

Although no other vehicle collided with that disabled car, a three-vehicle collision occurred between vehicles traveling behind the car. Other traffic approached the congestion caused by the previous incidents and, at a point estimated by witnesses as nearly a thousand feet from the three-vehicle collision, another five cars were involved in collisions. Various suits and countersuits resulted and Pepsi was impleaded as a third-party defendant by three of the litigants. The case proceeded to trial and at the conclusion of the evidence, the trial court granted peremptory instructions for Pepsi on all claims against it. On appeal, one of the drivers involved in the five-car collision argued that the trial court erred in absolving Pepsi. The appellate court affirmed the trial court's decision, reasoning as follows:

> We conclude that the trial court correctly adjudged that Pepsi's misconduct was too remote and superseded by too many intervening factors to afford basis for liability against Pepsi for the five-car collision involved on appeal. . . [I]t would appear abnormal to suppose that Pepsi's original negligence was not superseded in light of so many instances in which motorists had safely stopped between the site of Pepsi's negligence and the locale of the five-car collision at bar.

*Id*. at 957-58. *See also Cadle v. Cornett*, No. 2010-CA-001063, 2013 WL 3604642, *3 (Ky. Ct. App. July 12, 2013) (finding no proximate cause between negligence of first driver in falling asleep at the wheel and causing an accident that resulted in traffic congestion and a second accident caused when a truck rear-ended a vehicle stopped at the end of the stalled traffic).

Plaintiffs rely on the Eighth Circuit Court of Appeals' decision in *Heatherly v. Alexander*, 421 F.3d 638, 641-42 (8th Cir. 2005) to support their argument that the question of proximate cause in this case should be decided by a jury. Plaintiffs' reliance is misplaced. In *Heatherly*, truck driver David Gilbertson parked his truck on the shoulder, or emergency lane, of a deceleration portion of an exit ramp off of Interstate 80. Approximately one hour later, the plaintiffs' motor home, which was towing a car, approached Gilbertson's stopped truck. At that time, a truck driven by Steven Alexander came up behind the plaintiffs' motor home at a speed of nearly ninety miles-per-hour. Alexander's truck struck the back of the towed car, propelling the car forward and striking the motor home. Alexander's truck then hit the back of the motor home, forcing the motor home into the back of Gilbertson's parked

8

truck.

The plaintiffs brought suit against Gilbertson and his employer, MST, in the United States District Court for the District of Nebraska. The case went to trial and, at the close of evidence, Gilbertson and MST moved for judgment as a matter of law. Taking the matter under advisement, the district court submitted the case to the jury. The jury deadlocked and the court declared a mistrial, but then granted the defendants' motion for judgment as a matter of law. In doing so, the district court found that Gilbertson's conduct in parking the truck on the exit ramp was not the proximate cause of the plaintiffs' injuries, but only created a condition by which those injuries were made possible. The Eighth Circuit reversed and remanded the case, finding that there was a question of fact as to the proximate cause of the plaintiffs' injuries. The Court of Appeals concluded that there was sufficient evidence to create a jury question regarding causation.

*Heatherly* is distinguishable from the situation at hand. *Heatherly* involved an actual impact between the plaintiffs' vehicle and the truck operated by Gilbertson. Unlike the accident in *Heatherly*, there was no impact between the Schmidt vehicles and the trucks driven by Zhukov and Johnson. Moreover, the Eighth Circuit concluded that Gilbertson's conduct in parking on the exit ramp may have constituted "continuing negligence," whereas any purported negligence on the part of Defendants in this case had come to an end. The force of the Zhukov/Johnson accident was spent before the Slezak/Schmidt collision occurred. Police had been dispatched to the scene and multiple other vehicles had safely stopped behind the Zhukov and Johnson trucks, including the Schmidt vehicles. Slezak failed to follow the pattern of conduct all others followed after the Zhukov/Johnson accident came to a rest. Therefore, Plaintiffs' reliance on *Heatherly* is unavailing. See *Anderson v. Jones*, 66 Ill. App.2d 407, 414, 213 N.E.2d 627, 630 (1966) (finding that the defendant, Jones, who caused an accident blocking traffic, did not proximately cause a second accident occurring when another driver, Zehr, hit the plaintiffs' vehicle in the stopped traffic, stating, "Jones' negligence set up non-normal road conditions, conditions seen, observed and recognized by all others who were not the victims of the original force initiated by Jones . . . The negligence of Zehr caused the injuries to the plaintiffs solely because he failed to see, observe and to act as the others did and as he might have done, had he acted and responded as a reasonably prudent man").

Slezak's actions in colliding with the Schmidts constituted an efficient intervening cause, which severed the causal connection between Defendants' allegedly negligent conduct and Plaintiffs' injuries. No reasonable juror could conclude otherwise. Therefore, Defendants' motions for summary judgment will be granted.

For the reasons expressed above,

**IT IS ORDERED:**

1. Defendants Vladimir Zhukov, Swift-Truck Lines, Ltd., and MTR Express, Inc.'s Motion for Summary Judgment (filing 113) is granted. All claims asserted against these Defendants by Plaintiffs are dismissed with prejudice.

2. Defendant Long Haul Trucking, Inc.'s Motion for Summary Judgment (filing 117) is granted. All claims asserted against this Defendant by Plaintiffs are dismissed with prejudice.

3. Plaintiffs' Motion for Leave to File a Second Amended Complaint (filing 141) is denied as moot.

4. Defendants Josef Slezak and AKI Trucking Inc.'s Motion for Partial Summary Judgment (filing 120) is denied as moot.

**DATED May 21, 2014.**

          **BY THE COURT:**

          **S/ F.A. Gossett**
          **United States Magistrate Judge**